84  351
87  404
87  414
84  351
91  688

THE CENTRAL RAILROAD AND BANKING COMPANY *v.* KENT.

1. In a suit against a railroad company for damages from its negligence in not keeping in good order its road and road-bed on an embankment through which ran a culvert, testimony to the effect that a certain point before reaching the place of the disaster, and where trouble had previously occurred from the track's rising from quicksand pressure in wet weather, was found on arrival to be in good condition and being watched by section forces, and that after passing that point the company's servants apprehended no further danger, "having passed the only point at which there was any particular reason to apprehend danger," should not have been excluded.

2. What citizens of that particular locality, attracted to the culvert where the accident occurred, stated as to the rain, height of water and its effects, etc., was mere hearsay, and was properly excluded.

3. The testimony of one of the company's servants that it was always his custom to carefully examine the bridges and culverts on the road, was not admissible.

4. 5. The rules of the company, placed in evidence by the plaintiff, requiring the road-master to go or send to any point on the road at which he had reason to apprehend there might be danger, it being his business to examine the road and know its condition, and he having testified that about three hours before the accident he went down into the water and examined the culvert under the embankment, and found everything as he thought safe, it was error to exclude his testimony that he "apprehended no danger there," and that he "thought there might be danger" at another place to which he had sent the road hands.

6. Testimony that there was no reason why the culvert should have been suspected by the company's servants, and that there was no indication of danger to require men to watch it, was not admissible, it not appearing that the witnesses were experts or knew anything of railroad embankments or culverts, although they lived in the neighborhood, and had stated the facts and circumstances of the rainfall as touching the culvert in question.

7. 8. Exclusion of testimony that the witness could "account for this washing only by the fact that at this particular point the flood was so much more sudden and severe, amounting in fact to a regular water-spout," and that he knew "nothing more than that the officers and employés were all anxious to prevent accident, used in this case all the diligence and care possible under the circumstances to prevent accident and to discover and repair damage from the heavy rain, so excessive and unusual in its character and suddenness," was not error.

9. The pressure of the case is upon the question whether the company was negligent in not knowing of the washout, so as to have given the plaintiff due notice and warning ; and this is a question for the jury, under proper instructions by the court.
February 10, 1890.

Railroads.  Negligence.  Evidence.  Charge of court. New trial.  Before Judge Gustin.  Bibb superior court. May term, 1889.

Reported in the decision.

R. F. Lyon, for plaintiff in error.
Dessau & Bartlett, *contra.*

Blandford, Justice.

Kent brought his action against the railroad company for damages, and alleged that on the 27th of July, 1887, he was in the employment of said company as engineer ; that while engaged in the performance of his duties as such, half a mile west of Spring Vale, a " flag " or " half " station on said railroad, his engine was suddenly and without any fault on his part precipitated into an open excavation in the road, caused, so far as he could see, by the giving away of the embankment of earth on which the track was laid ; that he had no warning and no opportunity of knowing that there was any defect in that portion of the track ; that the last time he passed that place the track was apparently in good order; that when he first discovered the defect he was within thirty feet of it, and his engine running at the rate of twenty miles an hour; that the injuries he received were without any fault on his part, and were received while he was at his post in the discharge of his duty seeking to save the lives of those entrusted to his care; and that he used all ordinary care and diligence to avoid the injury.    He further alleges that the defect was caused by the negligence of the defendant in not keeping its road and road-bed in good order ; that it

was the defendant's duty to have known of said defect in time to warn him and prevent the injury; and that a sufficient time had elapsed between the falling in of the embankment and the time his train was due at that point for the servants of the defendant to have ascertained the existence of the danger and notified him in time to stop the train; that no signal whatever was given; that under the embankment was a small culvert utterly insufficient to carry off the surface water that had its natural drainage through the culvert, and that by reason of the insufficient size of the culvert and its total want of repair, the surface water running through it had destroyed its capacity, and the water had gradually undermined the embankment so that the same fell in; in consequence of which the plaintiff was greatly injured and damaged, etc. A verdict was had for the plaintiff; whereupon the railroad company moved for a new trial, and the denial of this motion is excepted to.

1. In the first ground of the motion for a new trial it is alleged that the court erred in ruling out the following answer of Theodore D. Kline, a witness for the defendant: "About three miles west of Cuthbert, we previously had trouble by reason of the track rising from quicksand pressing in wet weather. On arriving at this point it was found in good condition and being watched by section forces. After passing this point three miles west of Cuthbert, we apprehended no further danger, having passed the only point at which there was any particular reason to apprehend danger." We think the court erred in ruling out this testimony. It tended to show that the servants of the defendant were exercising diligence, and furthermore that they had no reason to apprehend further danger, " having," in the language of the witness, " passed the only point at which there was any reason to apprehend danger."

2. The court below at the same time ruled out the

v 84-23

following additional portion of this witness's testimony as set out in the 1st ground of the motion for a new trial: "Citizens of that particular locality, attracted to the culvert where the accident occurred, stated that there had been a water-spout; that the water was higher than ever before. Some of the citizens stated, at the time of the accident, that mill-dams had gone that had stood for forty years or more." This part of the testimony we think was properly ruled out. It was mere hearsay. The citizens who made these statements to the witness were competent witnesses themselves, and their testimony could have been taken.

3. It is also alleged as error that the court ruled out the following part of Kline's answer to the 5th cross-interrogatory: "It was always his custom to examine them carefully." We think the court was right in this ruling. What his custom was did not bear upon the issue in this case.

4. The 3d ground of the motion is that the court erred in ruling out as evidence for the defendant the following part of the answer of the witness J. A. Jordan to the second direct interrogatory: "I apprehended no danger there." We think the court erred in ruling out this testimony. Jordan was an agent whose business it was to examine the road and to know its condition, and he had testified that, some three hours before the accident, he went down into the water and examined the culvert under the embankment where the accident occurred, and found everything, as he thought, safe. Besides, the rules of the company, which had been placed in evidence by the plaintiff, required this witness, who was the road-master, to go or send to any point on the road at which he had reason to apprehend there might be danger. It is fair to infer that if he had no apprehension it was because he had no reason for it, as he thought; and his duty under the rules rested somewhat on his opinion.

5. It is also alleged as error that the court ruled out the following in the same answer : "Because he thought there might be danger at that place," meaning the place to which he had sent the road hands—not the place where the accident occurred.   We think this testimony ought also to have been allowed to go to the jury.

6. It is alleged as error that the court ruled out the following testimony of C. C. Willis, a witness for the defendant: " There could have been no reason in the world why the culvert should have been suspected by the railroad employés, servants or officers, of weakness or incapacity to carry off any rainfall that might occur, nor was there the smallest indication of danger to require men to watch it."   There being no evidence that this witness was an expert, or that he knew anything of railroad embankments or culverts, although he lived in the neighborhood of the culvert and had stated the facts and circumstances connected with its falling and as to the rainfall, his testimony as above set out was mere matter of opinion, and was not admissible.   The same may be said as to the answer of the witness W. H. Phillips, set out in the 8th ground of the motion for a new trial.

7. The 6th ground of the motion is, that the court erred in ruling out the following testimony of C. E. Clark, a witness for the defendant: " I can account for this one washing only by the fact that at this particular point the flood was so much more sudden and severe, amounting in fact to a regular water-spout."   It is not clear to us that this testimony was admissible, and we cannot say that the court erred in excluding it.

8. Nor do we see any error in excluding the answer of this witness set out in the 7th ground of the motion.

9. The remaining grounds are the general ones that the verdict is contrary to law and to the evidence.   The evidence showed that there had been a sudden and tremendous rainfall at and about the place of the accident;

indeed, it was unprecedented in that locality so far as known to the people of the neighborhood   The culvert and embankment had stood from the time of their erection, about thirty years, and no difficulty had occurred before at that point.   The road-master had sent several hands to a place about two miles from that point, where it was supposed that trouble might occur.   This heavy rainfall took place within an hour and a half or two hours of the arrival of the train at that point.   The question is, was the railroad company negligent in not knowing of the washout so as to have given the plaintiff due notice and warning?   This was a question of fact for the jury.   Did the railroad company have time to know the washout had occurred, so that it would be chargeable with notice thereof?   If the company knew or could have known of this washout, by the exercise of ordinary and reasonable care and diligence, it would seem from the authorities that it would be liable to the plaintiff for the damage he sustained.   But if it did not know of it, and if there was no negligence on the part of the company's servants in not knowing or trying to know, the company would not be liable.   It seems to us the pressure of the whole case is upon this point, and in the charge of the court as contained in the record we do not think that this point was prominently brought to the attention of the jury.   This is a matter for the jury to pass upon on another trial of the case.

The judgment is reversed because the court below erred in not granting a new trial.  *Judgment reversed.*